The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Harold Gene HAYNIE, Defendant–Appellant.

No. 89CA2125.

Colorado Court of Appeals, Div. I.

Sept. 12, 1991.

As Modified on Denial of Rehearing Oct. 10, 1991.

Certiorari Denied March 16, 1992.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Paul Koehler, Asst. Atty. Gen., Denver, Colo., for plaintiff-appellee.

John J. Mitchel, Montrose, Colo., for defendant-appellant.

Opinion by Judge PIERCE.

Defendant, Harold Gene Haynie, appeals a judgment of conviction entered upon jury

verdicts finding him guilty of second degree kidnapping and second degree kidnapping involving sexual assault. We affirm.

Defendant is the father of two minor children, both of whom lived in Colorado with their mother at the time of the alleged kidnapping. Defendant and the children's mother were divorced in Texas. Pursuant to the Texas decree, mother was granted legal custody of the children, and defendant was granted visitation, among other times, each year from December 25th through December 29th. He was required, under the decree, to "return the children to [the mother] at the end of each period of possession," and to keep the mother informed of his current address. Although granted in 1987, the decree was not filed in Colorado until February 16, 1989.

On December 25, 1988, defendant picked up the children at the mother's home. By letter postmarked in Colorado on December 27, 1988, defendant informed the mother of his intent not to return the children, and he did fail to return the children on December 29th. The children were eventually located in Ohio in January 1989, were surrendered to Social Services, and were placed in a foster family until ultimately returned to the mother.

Defendant was subsequently charged and convicted of the offenses at issue here.

## I.

Defendant first asserts that a crime, if any, had to have occurred on December 29th at the conclusion of formal visitation. Citing *Hendershott v. People*, 653 P.2d 385 (Colo.1982) and § 18-1-201(2), C.R.S. (1986 Repl. Vol. 8B), defendant contends that, since he was outside Colorado by that date, there could be no seizing and carrying away without lawful justification contrary to the Colorado statute, § 18-3-301(1), C.R.S. (1986 Repl. Vol. 8B). Hence, he argues, since no criminal conduct occurred in this state, there can be no jurisdiction here. We disagree.

Defendant was charged under §§ 18-3-302(1) and 18-3-302(3)(a), C.R.S. (1986 Repl. Vol. 8B). And, § 18-1-201(3), C.R.S.

(1986 Repl. Vol. 8B) states, in pertinent part:

"Whether an offender is in or outside of the state is immaterial to the commission of an offense based on an omission to perform a duty imposed by the law of this State."

As we are instructed by *Armendariz v. People*, 711 P.2d 1268 (Colo.1986), a minor child cannot consent to being taken by another. Rather, consent must be given by one having legal custody of the child. Likewise, Colorado must recognize and enforce custody decrees from other states. Section 14-13-114, C.R.S. (1987 Repl.Vol. 6B). And, there is nothing to bar prosecution of a parent under the kidnapping statute if that parent's rights have been circumscribed by an order of custody of which he is in violation. *Lee v. People*, 53 Colo. 507, 127 P. 1023 (1912); *see People v. Tippett*, 733 P.2d 1183 (Colo.1987).

Thus, the relevant inquiry in determining whether our courts have jurisdiction is whether the Texas decree imposes upon defendant a duty recognized by the laws of this state. More specifically, is the foreign custody determination properly recognized as governing defendant's conduct with his children absent its filing in this state in accordance with § 14-13-116, C.R.S. (1987 Repl.Vol. 6B)? We conclude that defendant's conduct was circumscribed by the existing foreign decree, and thus, the trial court properly exercised jurisdiction over the offenses charged.

The Texas order sets forth the times during which visitation by defendant is permissible. Neither the authority of the Texas court nor the validity of the custody determination has been challenged, and thus, we limit our inquiry to its effect on the circumstances here.

Section 14-13-116(1), C.R.S. (1987 Repl. Vol. 6B) provides that a decree of another state which is filed in this state has the same effect as a decree rendered here, and may be so enforced. It is undisputed that the foreign decree was not filed in Colorado at the time of the alleged kidnapping. However, it is sufficient that a certified copy was introduced into evidence in defen-

dant's trial. Crim.P. 27 and C.R.C.P. 44; see *People v. Rivera*, 37 Colo.App. 4, 542 P.2d 90 (1975).

Therefore, since the foreign judgment was properly before the court and considered by the jury, our courts must recognize its force and effect on defendant's conduct in this state. *See Fry v. Ball*, 190 Colo. 128, 544 P.2d 402 (1975). Defendant was under a duty, recognized by the laws of this state, to return the children at the time prescribed in the custody determination. Absent consent from the custodial parent, his failure to so act is conduct for which he may be prosecuted in this state. *See* § 18–1–201(3); *Armendariz v. People, supra.*

It is also undisputed that any alleged sexual assault, which formed the basis for charging defendant under § 18–3–302(3)(a), occurred outside Colorado. However, §§ 18–1–201(1)(a) and 18–1–201(2), C.R.S. (1986 Repl.Vol. 8B) confer our courts with jurisdiction if conduct constituting an offense is committed partly within this state.

Under the second degree kidnapping statute, kidnapping involving sexual assault under § 18–3–302(3)(a) only increases the severity of the crime if the person kidnapped "[i]s a victim of sexual assault." The act of kidnapping itself must still be proved under § 18–3–302(1), which requires the prosecution to establish that defendant knowingly seized and carried away his son without consent, *see Armendariz v. People, supra*, and without lawful justification. *See People v. Schuett*, 819 P.2d 1062 (Colo.App.1991).

Under the circumstances here, the alleged conduct or omission to act in accordance with the custody decree is sufficient to confer jurisdiction in this state on charges of second degree kidnapping. *See* § 18–1–201(3). It is likewise sufficient to confer jurisdiction on the more serious charge of second degree kidnapping involving sexual assault. *See* § 18–1–201(2).

## II.

Defendant next contends that he was denied his constitutional right to counsel. He specifically argues that the trial court erred in finding a waiver of this right and in refusing to appoint substitute counsel after he made repeated requests for appointment of counsel and acknowledged his lack of legal expertise or competence necessary to represent himself. He also contends that the trial court impermissibly restricted his advisory counsel. We find no error.

## A.

A defendant's right to self-representation is conditioned upon the requirement that he has an intelligent understanding of the consequences. Although courts are to indulge every possible presumption against waiver, a waiver may be implied if it is shown that defendant knowingly and willingly undertook a course of conduct which evinces his intent to relinquish his right to representation. And, once a voluntary waiver has been established, the trial court must also insure, by specific inquiry on the record, that the waiver was knowingly and intelligently made. *People v. Arguello*, 772 P.2d 87 (Colo.1989).

When a defendant objects to court-appointed counsel, the trial court must inquire into the reasons for his dissatisfaction in order to determine whether good cause exists to substitute counsel. If the trial court's determination is that substitution is not warranted, defendant must be given a "clear choice" between present counsel and waiver of counsel. Such waiver is voluntary if defendant refuses, without good cause, to proceed with appointed counsel. *People v. Arguello, supra.*

Here, defendant was represented by the public defender through the preliminary hearing and the initial phases of discovery. Five months after the filing of charges and approximately two months prior to the trial date, defendant moved to dismiss the public defender as counsel. He alleged, among other things, that the public defender had been dishonest in notifying defendant of court appearances and had

failed to spend sufficient time with defendant in preparation for the case. Defendant also argued that the public defender was not competent to handle such a complex case. Defendant then moved for appointment of different counsel, pointing out that the case was also too complicated for a layman.

The trial court held several hearings to resolve this matter. At the first hearing, defendant was informed that he had the right to competent, appointed counsel, but not to "pick and choose who you want." The trial court found the public defender's representation to be competent and gave defendant a clear choice between proceeding on his own or with his then public defender. Defendant indicated that he understood and informed the trial court that: "I don't want the public defender's office. I feel like I am better off on my own." The trial court allowed the public defender's office to withdraw.

Approximately one month later, the trial court held a second hearing on this issue, concluding that it had not been adequately resolved previously. At this hearing, defendant denied his prior assertions of the public defender's incompetence and argued that his grievance was addressed to the manner in which the public defender was conducting himself with defendant. The trial court offered defendant the option of proceeding with a different public defender. Defendant clarified his options by responding, "If I don't take [the public defender], I don't get anybody. Is that what you are saying?" To which the court responded, "Absolutely. It's very clear." Defendant declined to proceed with any public defender.

The trial court found that defendant had not established good cause to dismiss the public defender. The trial court advised defendant on the appointment and function of advisory counsel and informed him of the consequences of declining representation and the factors under *Arguello* by which the trial court would determine whether defendant had waived his right to counsel. Defendant agreed to discuss the situation further with the public defender.

One week later, defendant informed the court that he would "proceed *pro se* with advisory counsel." The trial court again informed defendant that advisory counsel would not actively participate in the trial but would be present only as a resource for defendant, and it undertook steps to insure that defendant's voluntary waiver of counsel was done knowingly and intelligently. The trial court found that: "[D]efendant made a knowing, intelligent waiver of his right to court-appointed counsel and ... could present a defense which could be enhanced by the appointment of advisory counsel."

The trial court substantially complied with the inquiry required for defendants who wish to proceed *pro se*. *See People v. Arguello, supra; Colorado Trial Judges Bench Book* § 1.8.3 (1991). In addition, the totality of the circumstances here shows that defendant received numerous advisements, to which he indicated his understanding, as to the consequences of his refusal to proceed with appointed counsel. Therefore, despite defendant's repeated assertions of his incompetence and requests for appointment of substitute counsel, the record shows that he has not overcome the *prima facie* showing that his waiver was voluntarily, knowingly, and intelligently made. *See People v. Arguello, supra.*

### B.

■ Defendant next argues that the trial court erred in inappropriately limiting the performance of advisory counsel. Specifically, defendant argues that the scope of representation by advisory counsel should be equal to that guaranteed indigent defendants represented by public defenders under § 21-1-101(1), C.R.S. (1986 Repl.Vol. 8B). This contention has no merit and misperceives the distinction between court-appointed counsel and advisory counsel.

Indigent defendants represented by deputies of the office of the state public defender are granted full and competent representation, as would be given by a private attorney so hired. A public defender is not comparable to advisory counsel, since ad-

visory counsel does not undertake complete participatory representation.

Here, advisory counsel's role was restricted in that he was not permitted to interrupt the proceedings to "coach" defendant. However, the trial court allowed recesses or in-court consultations upon defendant's request. Further, defendant was advised numerous times of these procedures and the role and scope of assistance he would be given by advisory counsel. There is no error in so limiting the scope of assistance since defendant is not constitutionally entitled to the appointment of advisory counsel, *People v. Romero*, 694 P.2d 1256 (Colo.1985), and is not entitled to hybrid representation if advisory counsel is appointed. *People v. Arguello, supra.*

The record indicates that the trial court, in controlling the courtroom and how the trial would proceed, prohibited defendant's utilization of advisory counsel only insofar as the method of assistance would cause disruption in the course of the proceedings. There is no indication from the record that the trial court impermissibly limited defendant's requests or denied his requested consultations. There is, therefore, no error in limiting advisory counsel's assistance to that properly requested by defendant. *See People v. Lucero*, 200 Colo. 335, 615 P.2d 660 (1980).

### III.

Defendant next argues that his constitutional right to confront witnesses against him was violated. In particular, defendant contends that the trial court erred in finding a child-victim unavailable as a witness, which thereby permitted the use of the child's hearsay testimony as evidence that defendant sexually assaulted him. Defendant further contends that he was improperly denied pre-trial access to his sons and other prosecution witnesses and to potentially exculpatory evidence.

### A.

Section 13–25–129(1), C.R.S. (1987 Repl. Vol. 6A) provides that the out-of-court statement of a child-victim of a sexual offense is admissible in a criminal proceeding if, after a hearing, the trial court finds that the time, contents, and circumstances of the statement provide sufficient indicia of reliability. The trial court must also find that the child is unavailable and that there is corroborative evidence of the act which is the subject of the proceedings.

A finding of unavailability is appropriate if the trial court concludes that the child's emotional or physical health would be substantially impaired if forced to testify and that such impairment would be long standing. *People v. Diefenderfer*, 784 P.2d 741 (Colo.1989).

Here, the trial court heard evidence from the child's treating therapist, the children's advocate who located the children in Ohio, the children's foster mother, and defendant's own expert. Based upon this evidence, the trial court concluded that the statements had sufficient safeguards to ensure reliability.

From expert testimony opining long-term and substantial emotional impairment, the trial court found that the child witness was unavailable. This finding is bolstered by statements made by defendant which acknowledged the potentially harmful effects to his son from testifying and that he did not want his son to testify. Finally, there was sufficient corroborative evidence, in the form of physical evidence and expert opinion, to satisfy the statutory safeguards. As such, there was no error in admitting the child's hearsay statements. *See People v. Diefenderfer, supra; People v. Serna*, 738 P.2d 802 (Colo.App.1987).

### B.

#### 1.

At a pre-trial hearing approximately 10 days prior to trial, defendant informed the trial court that the children's mother was not permitting him access by telephone to his sons as required by the divorce decree. Defendant further informed the court that the mother had been instructed by the district attorney to refuse him access during the trial proceedings. Defendant alleges that the mother's refusal to allow access to

the children denied him his right to confront them as witnesses.

Although it is unclear from the record exactly what was initially conveyed to the mother, the district attorney informed the court, after the allegations were made known to the court, that the mother had since been informed that the district attorney's policy was to encourage witnesses to make themselves available to the other side in a criminal case, but that it was her decision as legal guardian whether to allow the telephone visitation.

Denial of visitation privileges pursuant to a decree does not automatically indicate a violation of an accused's right to confrontation. There is nothing in the record here to indicate that defendant was concerned about anything other than his visitation rights. However, even if we assume that he appropriately brought the issue before the trial court, the district attorney's subsequent communication to the mother sufficiently cured any impact there may have been on defendant's pretrial access to these witnesses. As such, if there exists any error affecting defendant's right to confrontation under the totality of the facts at issue, it could not have affected the outcome of the trial, and thus, it is harmless beyond a reasonable doubt. *See Topping v. People*, 793 P.2d 1168 (Colo.1990).

### 2.

At the same pre-trial hearing, defendant alleged that the district attorney "fraudulently" gave him erroneous addresses for two prosecution witnesses. The district attorney informed the court that he was unaware that the addresses given for the child advocate worker and the foster mother were no longer current and, the following day, furnished defendant with current addresses for each witness in compliance with the court's order.

At trial, the trial court sustained an objection from the prosecution and precluded defendant's inquiry on cross-examination as to the full address of the foster mother. Defendant argued that he had no previous opportunity to speak with this witness or the child protection worker. The trial court properly informed defendant that:

"You didn't bring this to my attention—you couldn't get a hold of her—until right now. The objection is sustained. There is no relevancy to her address at this point. You have her here and you can question her."

There is no evidence that defendant was in any way deprived of a fair opportunity to test the witnesses' credibility by limiting cross-examination on this issue. *See People v. Thurman*, 787 P.2d 646 (Colo.1990). Under these circumstances, then, defendant suffered no prejudice, and there is no reversible error. *See People v. Collins*, 730 P.2d 293 (Colo.1986); *Graham v. People*, 705 P.2d 505 (Colo.1985).

### C.

Finally, defendant contends that his right to confrontation was violated by the prosecution's failure to disclose a potentially exculpatory medical report of the children's first physical examination upon being taken into custody in Ohio.

A report of this examination was requested by the public defender during his representation of defendant. It was disclosed at that time that the report had not been made available to the prosecution, that it was not in the district attorney's file, and that the district attorney had disclosed every document or report that he had received. There is, therefore, no abuse of discretion or prejudice to defendant in refusing to sanction the nondisclosure of something not in one's possession. *See People v. Morino*, 743 P.2d 49 (Colo.App. 1987). Thus, there can be no constitutional violation resulting from defendant's own failure to subpoena the report or witness, or to otherwise seek the desired information.

### IV.

Defendant contends that a mistrial should have been granted after the prejudicial testimony of each of two witnesses, and as a result of medical problems which arose during the course of the trial.

## A.

### 1.

During direct examination of defendant's ex-wife, the prosecution asked her where she met defendant, to which she replied, "I met him in jail." The trial court found that the prosecutor did not intentionally elicit the remark and instructed the jury that the answer was unresponsive and should not be considered.

Since it is presumed that the jury understood and heeded the instruction to disregard, *People v. Moody*, 676 P.2d 691 (Colo.1984), the trial court did not abuse its discretion in refusing to declare a mistrial after this testimony. *See People v. Collins, supra.*

### 2.

Defendant further contends that a mistrial should have been declared after the testimony of an expert witness for the prosecution.

Prior to trial, the trial court limited the scope of direct examination by prohibiting the prosecution from inquiring whether the expert believed the child victim. During trial, the prosecution inquired of the expert:

Q: "Based upon your experience and training, what, if anything, does the detail that [the victim] brought to this interview and told you about ... indicate?

A: "It indicates that [the victim] is telling the truth."

After admonishing the district attorney to confine the expert's testimony so as to avoid any further potential for eliciting an improper opinion, the jury was instructed that the expert's answer was unresponsive and inappropriate and that it was not to be given any weight.

We recognize, as did the trial court, that a close situation is presented here, which could have been avoided by more appropriate questioning by the prosecutor. However, the trial court properly exercised its discretion by refusing to declare a mistrial.

Even if we assume the impropriety of this testimony, it may again be presumed that the jury understood and heeded the trial court's instruction to disregard that testimony. *People v. Moody, supra.* Therefore, there was no abuse of discretion in the trial court's refusal to declare a mistrial. *See People v. Collins, supra.*

## B.

After approximately two days of trial, defendant entered the hospital complaining of chest pains. Upon his release, defendant moved for a mistrial, stating that, in his physical condition, he could no longer withstand the stress of a trial. He further asserted his fear that this stress interfered with his ability to think clearly and would result in ineffective self-representation. Again, the trial court properly proceeded with the trial.

In addition to defendant's assertions, the trial court heard testimony from his treating physician who opined that, since there was no medical etiology for defendant's symptoms, they could be stress related.

The trial court denied defendant's motion, reminding defendant that he had declined counsel, had demanded this trial date, and had been advised and had indicated his understanding of the consequences of so proceeding. The trial court acknowledged the stress inherent in a trial, but it concluded that, while certain accommodations for defendant's comfort could be made upon defendant's request, there were no compelling medical reasons to declare a mistrial.

The record supports the trial court's finding that no compelling medical reason existed for a mistrial and that defendant had been repeatedly advised of his right to, and the consequences of, self-representation. Thus, under the circumstances, the trial court did not err in refusing to grant a mistrial. *See People v. Collins, supra.*

## V.

In a pre-trial ruling, the trial court excluded as irrelevant evidence proffered by defendant regarding the mother's behavior

or character prior to the birth of their first child.

The trial court committed no error in so limiting the presentation of evidence. *See* CRE 401 and 403; *People v. Carlson,* 712 P.2d 1018 (Colo.1986).

## VI.

Finally, defendant contends that the cumulative error which occurred during the trial operated to deny him a fair trial. Given the above dispositions of the alleged individual errors, there can be no cumulative error.

The judgment of the trial court is affirmed.

DUBOFSKY and SILVERSTEIN\*, JJ., concur.