**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Andrew G. HARRIS, Defendant–Appellant.**

**No. 93CA0963.**

Colorado Court of Appeals, Div. IV.

June 29, 1995.

Rehearing Denied Aug. 3, 1995.

Certiorari Denied April 15, 1996.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Roger G. Billotte, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Frances S. Brown, Chief Appellate Deputy State Public Defender, Thomas K. Carberry, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge DAVIDSON.

Defendant, Andrew G. Harris, appeals from the judgments of conviction entered upon jury verdicts finding him guilty of two counts of aggravated robbery and five habitual offender counts. We affirm.

Defendant was charged with aggravated robbery of a fast food restaurant. He was identified by employees present during the robbery as the man who entered the restaurant with what appeared to be a gun in his pocket and took cash from the deposit bag and cash drawer.

I.

■ Defendant's first argument on appeal is that his right to a speedy trial was violated. We disagree.

There were numerous delays between the time defendant was charged and the commencement of trial on these charges. As pertinent to this appeal, however, defendant explicitly waived speedy trial on June 16, 1992. Defendant concedes that this waiver extended the speedy trial period until December 16, 1992.

On September 25, 1992, defendant filed a motion to dismiss. The trial court denied this motion on September 28, 1992, and defendant then pursued a petition for writ of prohibition, which the supreme court denied on October 9, 1992. Defendant was returned

to court on October 16, 1992, and a new trial date was set for January 19, 1993.

The period of eleven days during which his petition for writ of prohibition was pending is excluded from the speedy trial period. *See* § 18–1–405(6)(b), C.R.S. (1994 Cum.Supp.). Accordingly, defendant argues that the prosecution therefore was required to bring him to trial no later than January 3, 1993, eleven days after the expiration of the previous speedy trial period.

Defendant, however, has ignored § 18–1–405(6)(h), C.R.S. (1994 Cum.Supp. 8B), which provides that: "The period of delay between the new date set for trial following the expiration of the time periods excluded by paragraphs (a), (b), (c), (d), and (f) of this subsection (6), not to exceed three months," is excluded from the speedy trial period.

Thus, the period of three months and eleven days was properly added to the previous speedy trial deadline of December 16, 1992. *See People in Interest of N.P.,* 768 P.2d 706 (Colo.1989); *cf. People v. Martin,* 732 P.2d 1210 (Colo.1987) (reasonable period for rescheduling trial added to time excluded from speedy trial computation because of voluntary absence of defendant). The trial date of January 19, 1993, was well within that period.

## II.

Defendant next contends that the trial court improperly allowed counsel to waive defendant's presence at a suppression hearing. We do not agree.

■ A defendant has the right to be present at every critical stage of a criminal trial including a suppression hearing. *See People v. Vega,* 870 P.2d 549 (Colo.App.1993). The right to be present at a suppression hearing, however, may be waived by the defendant if it appears that the ends of justice would not be frustrated thereby. *See People ex rel. Farina v. District Court,* 185 Colo. 118, 522 P.2d 589 (1974).

■ At the start of the hearing at issue here, defense counsel waived defendant's presence. Later in the hearing, counsel indicated that he did so with defendant's consent in order to avoid influencing the restaurant employees' identification of defendant. Defendant argues, however, that he did not consent to waive his presence during argument on the suppression issue.

■ "Due process only requires that a defendant be allowed to be present to the extent that a fair and just hearing would be thwarted by his absence." *Luu v. People,* 841 P.2d 271, 275 (Colo.1992). A defendant must be able to show how his absence from the proceedings affected his ability to defend against the charges. *People v. Vega, supra.*

Here, even if we assume defendant did not consent, he has not demonstrated how the fundamental fairness of the trial was affected by his absence during the argument phase of the suppression hearing at which he was represented by counsel and at which purely legal issues were presented and argued. *See Luu v. People, supra; People v. Vega, supra.* We therefore conclude that any error in extending that waiver to include defendant's presence during argument on the issue was harmless beyond a reasonable doubt. *See Luu v. People, supra.*

## III.

■ Defendant also contends that the trial court erred by failing to suppress the photo array identification of him as unduly suggestive. According to defendant, his photo was excessively distinctive in the array because only one other photo shows a man with a face as full as defendant's and this other man's hair was combed in a different style. We disagree.

■ The state is not required to produce exact replicas of the defendant for a photo array. *People v. Bolton,* 859 P.2d 311 (Colo. App.1993). To warrant suppression, the photo array must be suggestive to the point of making the identification unreliable as a matter of law. *People v. Hollis,* 43 Colo.App. 331, 605 P.2d 483 (1979).

A photo array is not unduly suggestive "if the photos are matched by race, approximate age, hair type, and a number of other characteristics." *People v. Kemp,* 885 P.2d 260, 263 (Colo.App.1994).

We agree with the trial court's determination that the photos used here were reasonably matched as to defendant's skin color, hair color and style, facial hair, age, and other physical characteristics and thus did not create a substantial possibility of misidentification. *See People v. Ridenour*, 878 P.2d 23 (Colo.App.1994).

## IV.

Defendant next raises several contentions relating to the denial of his *pro se* motion to dismiss his court-appointed counsel. We perceive no reversible error in any of the issues raised.

### A.

First, we reject defendant's argument that the trial court erred by failing to inform him of the constitutional right to self-representation.

■ Before ordering a change of court-appointed counsel, a trial court must inquire as to the reasons for the defendant's dissatisfaction. Such inquiry is necessary in order to verify that the defendant has a well-founded basis to believe that counsel cannot, or will not, competently represent him. *People v. Arguello*, 772 P.2d 87 (Colo.1989).

■ According to defendant, under *Arguello*, in the event the trial court determines that substitution of counsel is not warranted, it must advise the defendant that he has a choice between proceeding with present counsel and proceeding *pro· se*. We do not agree. We do not consider *Arguello* as requiring such an advisement. Neither do we agree with defendant that such a requirement should be established in order properly to preserve a defendant's right to self-representation.

### 1.

■ *Arguello* and subsequent cases make clear that, when an indigent defendant refuses without good cause to proceed with representation by a competent court-appointed attorney, a voluntary, albeit implied, waiver of the right to counsel has occurred. *See People v. Rocha*, 872 P.2d 1285 (Colo.App.

1993); *People v. Haynie*, 826 P.2d 371 (Colo. App.1991).

In *People v. Arguello, supra*, 772 P.2d at 94, the supreme court concluded that:

Once [a trial court] appropriately has determined that a substitution of counsel is not warranted, the court can insist that the defendant choose between continued representation by existing counsel and appearing *pro se*. In this context, a defendant must be given "a clear choice" between present counsel and waiver of counsel. A defendant who then refuses without good cause to proceed with able appointed counsel has effected a "voluntary" waiver.

■ Accordingly, under certain circumstances, a trial court may insist that a defendant choose either to waive the right to counsel or to accept continued representation by court-appointed counsel. No such waiver will be considered voluntary, however, unless the defendant is afforded this "clear choice" between the two options. *See People v. Arguello, supra*.

The *Arguello* court was not concerned, however, with determining whether the right to self-representation, as opposed to the right to counsel, had been voluntarily waived. Under the facts of that case and those of its progeny, the defendants chose to proceed *pro se* but were arguing on appeal that this choice was not voluntary. Protection of the right to self-representation was simply not at issue. *See People v. Rocha, supra; People v. Haynie, supra*.

Therefore, we do not read *Arguello* as imposing an additional duty on the trial court formally to advise a defendant of his right to self-representation simply because he has moved to dismiss court-appointed counsel without good reason.

■ Here, the record reflects that defendant did not refuse to proceed with present counsel after the trial court denied his motion to dismiss. Defendant here consistently asserted that he wanted, and needed, representation. The trial court was never presented with a request for self-representation and, thus, could not and did not. interfere with defendant's exercise of that right. *See*

*People v. Davis*, 851 P.2d 239 (Colo.App. 1993).

2.

Defendant argues, however, that even if *Arguello* does not hold so explicitly, we must infer such a duty on the part of the trial court because the right to self-representation is constitutionally guaranteed and a defendant must know of his rights before he can knowingly and intelligently waive them. We do not agree.

■ Before a trial court may allow a defendant to waive his constitutional right to counsel and proceed *pro se*, the defendant must unequivocally and timely assert his corollary constitutional right to self-representation: "A request stated in uncertain terms or in uncertain manner cannot be regarded as a demand for self-representation nor can it be considered as a waiver of the Sixth Amendment right to counsel." *People v. Mogul*, 812 P.2d 705, 709 (Colo.App.1991).

Defendant has cited no authority for the proposition that the trial court must conduct a formal advisement of the right to self-representation. Indeed, to the contrary, courts in other jurisdictions which have addressed the issue have determined that trial courts are not initially required to advise a defendant of that right. *See State v. Fritz*, 21 Wash.App. 354, 585 P.2d 173 (1978); *People v. Salazar*, 74 Cal.App.3d 875, 141 Cal. Rptr. 753 (1977).

■ Unlike the right to be represented by counsel, which is guaranteed because it is essential to a fair trial, the right to proceed without counsel is guaranteed because it is a matter of personal choice and no one should be forced to accept the services of counsel against his or her will. *See Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *People v. Salazar, supra.*

This right is afforded to a defendant even though, in practical effect, the defendant's · lack of legal knowledge and skill may detrimentally affect both his defense of the charges and the efficient administration of justice. However, as the Washington court stated, it "would be fundamentally unwise to impose a requirement that the court advise or suggest to a defendant this procedure which is likely to be to no one's benefit." *State v. Fritz, supra*, 21 Wash.App. at 359, 585 P.2d at 177; *see People v. Salazar, supra.* We agree with this reasoning and, in the absence of explicit contrary authority, conclude that the trial court is not required to advise a defendant as to a course of action—proceeding *pro se*—which, although constitutionally provided to him, is of dubious benefit.

B.

Secondly, defendant argues that the trial court erred in determining that he had not established good cause to dismiss court-appointed counsel. Again, we disagree.

Defendant contends that counsel was deficient in failing to secure sufficient law library time for defendant at the jail, failing to arrange a lie detector test, failing to present alibi witnesses, and failing to obtain a television news film of defendant's arrest on an unrelated criminal charge.

■ The right to counsel does not include the right to any particular attorney. *People v. Arguello, supra.* Court appointed counsel has broad authority as to the conduct of the trial. *See McClendon v. People*, 174 Colo. 7, 481 P.2d 715 (1971); *People v. Anderson*, 649 P.2d 720 (Colo.App.1982). To justify dismissal of counsel, the defendant must overcome the presumption that counsel's actions might be considered sound trial strategy under the circumstances. *People v. Oliver*, 745 P.2d 222 (Colo.1987).

After inquiring as to defendant's reasons for wishing to dismiss court-appointed counsel, the trial court here found that defendant suffered no prejudice through counsel's alleged shortcomings. It concluded that none of the concerns presented constituted a basis for a change of counsel and that defendant's motion was grossly untimely as it was submitted just prior to the commencement of trial. These conclusions are supported by the record and will not be disturbed here. *See People v. Haynie, supra; People v. Barnes,* ·636 P.2d 1323 (Colo.App.1981).

As to the failure to obtain the television news film, according to the record, defendant did not raise this as a reason for requesting dismissal of counsel prior to this appeal; therefore, we decline to address it. *See People v. Mershon,* 874 P.2d 1025 (Colo.1994); *People v. Aponte,* 867 P.2d 183 (Colo.App. 1993).

### C.

During the hearing on defendant's motion, counsel indicated to the trial court that he felt he could no longer represent defendant because the submission of the motion raised apprehensions that a grievance would be later filed against him. Defendant contends that the trial court abused its discretion by failing to substitute counsel because these apprehensions constitute an actual conflict of interest which destroyed the attorney/client relationship.

We agree with the trial court, however, that this potential exists every time an attorney takes on a case. The trial court's finding that this concern did not interfere unduly with the attorney/client relationship in this case is supported by the record. *See People v. Haynie, supra.*

### V.

Defendant argues that there was insufficient evidence to support the guilty verdicts on the habitual offender counts. We do not agree.

### A.

Defendant first argues that, as to several of the habitual offender counts, the prosecution failed to meet its burden of proof because the records of the judgments of conviction were not self-authenticating.

Our review of the documents submitted reveals that all of the disputed documents were accompanied by a certificate attesting that they are true and accurate copies taken from the public records over which the custodian has authority. Thus, the trial court did not err in finding them duly authenticated for purposes of the habitual offender charges. *See* § 16–13–103, C.R.S. (1986 Repl.Vol. 8A); CRE 902.

Contrary to defendant's assertion, there is simply no additional requirement that a public official attest to the genuineness of the judge's signature on the judgment of conviction. *See People v. Johnson,* 699 P.2d 5 (Colo.App.1984).

### B.

Defendant next argues that, as to each of several of the habitual offender counts, the mittimus submitted does not reflect the date of the conviction as it was alleged in the information. We disagree.

A conviction for purposes of the habitual offender statutes is effective as of the date the judgment of conviction is entered by the trial court. *People v. Jacquez,* 196 Colo. 569, 588 P.2d 871 (1979). A judgment of conviction consists of the recital of the plea, or the verdict or findings, the sentence, the amount of presentence confinement, and costs, if any, assessed against the defendant. *See* Crim.P. 32. A judgment enters when it is entered in the criminal docket. *See* C.A.R. 4(b)(1).

Here, each mittimus, or other document submitted, shows that the judgment of conviction was entered on the same date as alleged in the information. Consequently, defendant was fully apprised by the information as to the elements of the habitual criminal counts so that he could adequately defend against the charges. The date alleged in the information as the date of judgment of conviction is clearly and prominently indicated on each document. Hence, defendant may not obtain relief from the habitual offender charges on this basis. *See People v. Ortega,* 899 P.2d 236 (Colo.App.1994); § 16–13–101(2), C.R.S. (1986 Repl.Vol. 8A).

Relying upon *People v. Ganatta,* 638 P.2d 268 (Colo.1981), defendant argues that an order does not become a final judgment pursuant to Crim.P. 32(c) until the trial court has signed the minute order. However, *Ganatta* does not address the operative date for habitual offender charges. Moreover, Crim.P. 32(c) has been amended to eliminate, for purposes of finality, the requirement of the judge's signature. Thus, that the judge

did not sign the documents until several days after entry of judgment of conviction is immaterial.

### C.

Defendant next contends that another of the habitual offender counts must be reversed because the supporting documents are not court documents reflecting a conviction in Ohio but instead are unrelated documents taken, he surmises, from the files of the prosecuting attorney. Again, we disagree.

Looking at the journal entry as a whole, we are convinced it is a court record of an Ohio felony conviction and, therefore, is competent proof for habitual offender purposes.

### D.

Finally, defendant argues that one of the habitual offender counts must be reversed because the record of the Ohio conviction submitted in support thereof was not signed by the judge. In making this argument, however, defendant ignores the signed copy of the document in support of that charge which was submitted under a different exhibit number.

The judgments are affirmed.

MARQUEZ and KAPELKE, JJ., concur.