22CA1789 Peo v Walker 05-15-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1789
El Paso County District Court No. 20CR6300
Honorable Jessica L. Curtis, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Brian Keith Walker,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Gomez and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 15, 2025

Philip J. Weiser, Attorney General, Marixa Frias, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Patrick R. Henson, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Brian Keith Walker, appeals jury verdict convicting him of possession with the intent to manufacture or distribute a schedule I or II controlled substance, possession of a controlled substance, and possession of drug paraphernalia.  We affirm.

I.    Background

¶ 2    In November 2020, while conducting surveillance at a motel in a high-crime area known for drug dealing, police officers observed Walker get out of a car, grab something from the rear seat, and stuff it into his pants pocket.  After unsuccessfully attempting to enter a motel room, Walker returned to his car, removed the unknown item from his pants, and placed it in the trunk.  The officers proceeded to follow Walker's car before stopping him for a traffic infraction. During the stop, the officers saw a clear, bulbous pipe containing a burnt white residue in the center console.  The officers searched the car and seized three glass pipes; multiple plastic bags of substances that tested positive for methamphetamine, cocaine, and marijuana; and approximately $300 in cash.

¶ 3    The State charged Walker with multiple drug-related offenses. Following a two-day trial, the jury convicted him of possession with the intent to manufacture or distribute a schedule I or II controlled

substance, possession of a controlled substance, and possession of drug paraphernalia. The trial court sentenced Walker to twelve years in the custody of the Department of Corrections.

¶ 4 Walker challenges his convictions and contends that the trial court erroneously (1) denied him substitute counsel and (2) violated his constitutional right to self-representation. We address and reject each of his contentions.

## II.     Substitute Counsel

¶ 5 First, Walker contends that the trial court abused its discretion and reversibly erred when it denied his requests for substitute counsel. We are not persuaded.

### A.     Additional Facts

¶ 6 As relevant here, Walker was represented by two court-appointed attorneys from the Colorado Public Defender's Office. Walker's first attorney left the office before Walker's trial, and new counsel stepped in. The court granted Walker five conflict hearings to resolve Walker's alleged issues with his new counsel. At all five hearings, the court found no conflict.

## 1.    Hearing on June 7, 2021

¶ 7    At his arraignment, Walker informed the court that he did not want to speak with his counsel because there was an "actual conflict." The trial court conducted an ex parte hearing. Walker argued that prior counsel said he was filing a motion to dismiss the case because the evidence had not been tested. Walker's new counsel advised him that the evidence was tested, but Walker did not believe him.

¶ 8    Walker also expressed frustration regarding the delay of his preliminary hearing and said his new attorney gave him conflicting information. The court reminded Walker that his preliminary hearing was originally set for April 19, but because he had failed to appear, the court rescheduled the hearing for April 26. When Walker failed to appear a second time, the court found a waiver of the preliminary hearing. The court explained to Walker that this was a legal decision that had nothing to do with counsel's representation.

¶ 9    Nevertheless, Walker said he did not want his counsel to represent him and that he wanted to "move forward with [his] preliminary with a new attorney." The court asked counsel if there

was a conflict of interest, and counsel responded, "No." Counsel said he and Walker met for an hour the previous week and discussed the "bulk" of Walker's complaints.

¶ 10    The trial court found no conflict of interest, reasoning that Walker's contentions were primarily regarding the treatment he received from the court's rulings, not his counsel. Walker asked for another conflict hearing at his next arraignment, but the court denied this request and found no new issues had been raised.[1]

### 2.    Hearing on August 9, 2021

¶ 11    The next month, Walker requested another conflict hearing, stating that "the communication [with his attorney] was just not there" and that his attorney was "not aggressive enough." The court conducted an ex parte conflict hearing.

---

[1] Walker did not provide a transcript of this hearing as part of the appellate record, so we must assume the correctness of the court's ruling. *See People v. Duran*, 2015 COA 141, ¶ 12 ("It is the appellant's responsibility to designate the record on appeal, including those parts of the trial proceedings that are necessary for purposes of the appeal . . . ."); *see also People v. Wells*, 776 P.2d 386, 390 (Colo. 1989) (concluding that any facts not appearing in the record cannot be reviewed and that the presumption is that the material portions omitted would support the judgment).

4

¶ 12    Walker again argued that counsel was responsible for the errors surrounding his preliminary hearing and that counsel should not have waived the hearing. The court reminded Walker that "[his counsel] didn't waive [Walker's] preliminary hearing" because the court found Walker's lack of appearance to be a waiver. Walker also faulted counsel for not filing a motion to dismiss. Walker also said counsel showed no interest in his case, did not do any investigation, and was incompetent.

¶ 13    Counsel explained that Walker was upset with him after he told Walker that he did not believe previous counsel said the case would be dismissed. Counsel said Walker's continued frustration over losing his preliminary hearing constituted most of their conversations "in the last couple of months," even after counsel's multiple attempts to explain that Walker had waived his preliminary hearing.

¶ 14    After "observing [the parties'] demeanor," the trial court found no conflict of interest.

### 3.    Hearing on November 8, 2021

¶ 15    Walker requested another conflict hearing at the pretrial readiness conference, and the court granted his request. Walker

explained that he and counsel were "just not seeing eye to eye on a lot of things." After reviewing the testing results of the evidence seized from the car, Walker believed the evidence "need[ed] to be tested further." He said that counsel laughed at him and that he was just "not comfortable with [counsel] at all."

¶ 16    In response, counsel explained that during a Webex call, Walker had "scream[ed]" at him to research "baking soda and sodium bicarbonate," claiming that was what he possessed. He Googled Walker's search terms, "cracked a smile kind of while [he] was being screamed at," and showed Walker the results on his phone. Counsel explained he had reviewed both the discovery and the test results with Walker.

¶ 17    The trial court again found no conflict. Walker proceeded to tell the court that parts of what his counsel told the court were "fictious" and that he still "[didn't] know to this day who waived [his] preliminary hearing." Walker again asked for substitute counsel, which the court denied.

4.    Hearing on March 1, 2022

¶ 18    On the first day of trial, Walker raised his earlier concerns with counsel. The court asked whether there was any new

information, and Walker responded that counsel told him that he "works for somebody else" and that counsel was not representing his best interest. The court conducted another conflict hearing.

¶ 19 Counsel explained that a recent conversation with Walker had devolved into an argument concerning the preliminary hearing and motion to dismiss issues. Additionally, Walker sought to admit a letter from previous counsel at trial, and counsel said he would not do so without seeing the letter first. Counsel also clarified that in response to Walker's comment that counsel worked for him, counsel said, "No, I represent you. I work for the Public Defender's Office."

¶ 20 The court then explained that the admission of evidence was a strategic decision that counsel made. Walker then argued that the "main piece of evidence . . . [was] the 17.7 ounces of baking soda," which was not "field tested," and that if he'd had his preliminary hearing, this evidence "would have never been able to be introduced." The court reminded Walker that it was the court's decision to find a waiver of his preliminary hearing and that counsel could decide, as a matter of strategy, whether to file a motion to dismiss. The court found no conflict of interest.

### 5. Hearing on March 2, 2022

¶ 21     On the second day of trial, Walker raised an issue concerning a prosecution witness. The trial court conducted another conflict hearing.

¶ 22     Walker complained that counsel had called his girlfriend, a prosecution witness, without Walker being present for the call. He said he and counsel disagreed about whether to call her as a defense witness and said counsel believed she had "massive credibility issues."

¶ 23     Walker also explained that he had an insufficient amount of time to consider the plea offer or to discuss it with counsel and was simply told there was "an offer on the table." Walker said he wanted to accept the offer before the trial started but learned that it was "off the table." Counsel said the plea offer was made in January 2022 and was available until the week before the trial. Each time they had discussed the offer, Walker said he would not take a "DF3, cap six" and that "it should have been a DF4 or lower, if [they] had gone to preliminary hearing." Counsel said he had spoken to the prosecutor and asked if the plea offer was still available but was told "absolutely not."

8

¶ 24 Walker then argued that counsel had not "investigate[d] certain things" such as why Walker was at a motel. Counsel responded that there was no surveillance footage from the motel to investigate. He also said that Walker had given him a Google search printout to support Walker's belief that a chemical test of sodium bicarbonate would show as cocaine. Counsel said his own research did not support Walker's claim.

¶ 25 The trial court again found no conflict and said it was counsel's strategic decision whether to call Walker's girlfriend as a witness. Walker then admitted he was not "saying there [was] a conflict" with his counsel but instead felt as though they could have discussed "some important things" had Walker been present at the pretrial conference. The court reminded Walker that his counsel had scheduled a meeting with Walker after the pretrial conference, but Walker refused to go. Counsel confirmed that Walker had never scheduled any appointments with him after the pretrial conference and did not appear for the two appointments counsel had scheduled.

## B. Standard of Review and Applicable Law

¶ 26   We review a trial court's decision to deny substitute counsel for an abuse of discretion. *People v. Weeks*, 2015 COA 77, ¶ 101. A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *See People v. Johnson*, 2021 CO 35, ¶ 16.

¶ 27   Although an indigent criminal defendant has a constitutional right to counsel, they do not have a right to their counsel of choice. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16; *see also People v. Arguello*, 772 P.2d 87, 92 (Colo. 1989). Moreover, the right to counsel includes the effective assistance of counsel, "and does not necessarily include 'a meaningful attorney-client relationship.'" *Arguello*, 772 P.2d at 92 (quoting *Morris v. Slappy*, 461 U.S. 1, 14 (1983)).

¶ 28   When an indigent criminal defendant objects to court-appointed counsel, the court must inquire into the reasons for the defendant's dissatisfaction. *People v. Bergerud*, 223 P.3d 686, 694 (Colo. 2010); *Arguello*, 772 P.2d at 94. Before a substitution of counsel is warranted, the court must determine whether the defendant has a well-founded reason to believe court-appointed

counsel either cannot or will not completely represent them. *Arguello*, 772 P.2d at 94. "As long as the trial court has a reasonable basis for believing that the lawyer-client relation has not deteriorated to the point where counsel is unable to give effective aid in the fair presentation of a defense, the court is justified in refusing to appoint new counsel." *People v. Schultheis*, 638 P.2d 8, 15 (Colo. 1981). If the defendant establishes good cause, such as a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict that may lead to an unjust verdict, the court must appoint substitute counsel. *Arguello*, 772 P.2d at 94.

¶ 29 Additionally, a conflict of interest exists when the attorney's ability to represent a client is materially limited by the attorney's own interests. *People v. Stroud*, 2014 COA 58, ¶ 38. To prove an actual conflict of interest, a defendant must "identify something that counsel chose to do or not do . . . and must show that the course taken was influenced by that conflict." *Id.* (quoting *People v. Kenny*, 30 P.3d 734, 745 (Colo. App. 2000)).

¶ 30 Courts consider four factors in evaluating the constitutional implications of a request for substitute counsel, including (1) the timeliness of the defendant's motion; (2) the adequacy of the court's

11

inquiry; (3) whether the conflict between the defendant and their attorney was so great that it resulted in a total lack of communication or otherwise prevented an adequate defense; and (4) whether the defendant substantially and unreasonably contributed to the conflict with their attorney. *Bergerud*, 223 P.3d at 695; *see also People v. Session*, 2020 COA 158, ¶ 15.

## C.    Analysis

¶ 31    We conclude that the trial court did not abuse its discretion for two reasons. First, a true conflict of interest did not exist between Walker and court-appointed counsel. A lawyer has a conflict of interest when their loyalties are divided. *See* Colo. RPC 1.7, 1.9. An actual conflict of interest is one that is real and substantial, whereas a potential conflict is one that is possible, is nascent, or in all probability will arise. *People v. Kelling*, 151 P.3d 650, 657 (Colo. App. 2006) (citing *People v. Harlan*, 54 P.3d 871, 878 (Colo. 2002)). Neither the existence of animosity between Walker and counsel nor Walker's asserted disagreements with counsel regarding hearings and plea bargains constitute an actual or potential conflict of interest requiring the appointment of substitute counsel. *See People v. Garcia*, 64 P.3d 857, 864 (Colo.

App. 2002) (finding that the conflict between defendant and his counsel was a disagreement over strategy, and thus did not require appointment of new counsel); *People v. Apodaca*, 998 P.2d 25, 28 (Colo. App. 1999) (counsel's personal disbelief of defendant's version of the facts did not require court to appoint substitute counsel based on an alleged conflict of interest).

¶ 32    Second, the record supports the conclusion that there was not a complete breakdown in communication between Walker and counsel.  Mere communication difficulties do not demonstrate a complete breakdown in communication.  *See People v. Thornton*, 251 P.3d 1147, 1151 (Colo. App. 2010) (refusing to find a complete breakdown in communication requiring substitute counsel even though counsel admitted to "a lot of communication breakdowns" because he assured the court that he was in contact with the defendant and continued to represent his interests); *People v. Jenkins*, 83 P.3d 1122, 1126 (Colo. App. 2003) (a complete breakdown of communication was still not established where counsel met with the defendant only once in nine months and had not discussed potential witnesses with him or given him copies of discovery); *cf. United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir.

2002) (finding a total breakdown in communication because counsel had never interviewed defendant before trial and defendant was unable to contact counsel). Moreover, we are not convinced that counsel's laughter at Walker or the fact that they did not see eye to eye amounts to a breakdown in communication. *Morris*, 461 U.S. at 14 (the right to counsel does not necessarily include a meaningful attorney-client relationship).

¶ 33 Walker admitted and the record shows that he and counsel continued to have conversations, which illustrates an ongoing channel of communication. Walker and counsel continued to meet and continued to disagree with each other over the preliminary hearing waiver and matters of strategy. *See Kelling*, 151 P.3d at 653 (disagreements pertaining to matters of trial preparation, strategy, and tactics do not establish good cause for substitution of counsel); *see also Bergerud*, 223 P.3d at 693 ("On issues of trial strategy, defense counsel is 'captain of the ship.'" (quoting *Arko v. People*, 183 P.3d 555, 558 (Colo. 2008))).

¶ 34 Finally, two of the errors Walker alleges were not a result of counsel's actions. As the trial court repeatedly mentioned, Walker's failure to appear for the second preliminary hearing formed the

basis for the court's finding of a waiver, a legal ruling Walker does not challenge on appeal. *See People v. Abbott*, 638 P.2d 781, 785 (Colo. 1981) (holding that the failure of the defendant to appear constituted an implied waiver of the preliminary hearing). Further, Walker does not assert that counsel failed to convey the plea bargain offer to him. Instead, the record shows that Walker made his decision to accept the plea offer after it had lapsed, which does not establish good cause. *See People v. Corson*, 2016 CO 33, ¶ 35 (holding that in the plea context a defendant must demonstrate a reasonable probability that, but for counsel's errors, they would have accepted the plea offer rather than going to trial); *see also People v. Jasper*, 17 P.3d 807, 813-14 (Colo. 2001) ("A defendant does not possess an absolute right to plead guilty," and "[t]he use of plea cutoff deadlines provides the trial court with a management tool that increases the efficient operation of the courts for the benefit of all citizens.").

¶ 35  Accordingly, we discern no abuse of discretion in the court's denial of Walker's request for substitute counsel.

### III. Self-Representation

¶ 36    Walker next contends that the trial court violated his constitutional right to self-representation by (1) failing to ask if he wished to continue with court-appointed counsel or represent himself and (2) not advising him of his right to self-representation. We disagree.

#### A.    Standard of Review and Applicable Law

¶ 37    The United States and Colorado Constitutions extend an indigent criminal defendant the right to self-representation. *See* U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16. Before proceeding pro se, a defendant must knowingly, intelligently, and voluntarily waive their constitutional right to counsel. *Arguello*, 772 P.2d at 93. "Whether a defendant effectively waived the right to counsel, and therefore can exercise the right to self-representation, is a mixed question of fact and law." *People v. Lavadie*, 2021 CO 42, ¶ 22. On appeal, we "accept the trial court's findings of historic fact if those findings are supported by competent evidence, but we assess the legal significance of the facts de novo." *People v. Coke*, 2020 CO 28, ¶ 10 (quoting *People v. Davis*, 2019 CO 24, ¶ 14); *see*

*also People v. Johnson*, 2015 COA 54, ¶ 15 ("We review de novo whether a defendant was denied the right to self-representation.").

¶ 38   Where a trial court determines that substitute counsel is not warranted, "the court can insist that the defendant choose between continued representation by existing counsel and appearing pro se." *Arguello*, 772 P.2d at 94. "A request stated in uncertain terms or in uncertain manner cannot be regarded as a demand for self-representation nor can it be considered as a waiver of the Sixth Amendment right to counsel." *People v. Mogul*, 812 P.2d 705, 709 (Colo. App. 1991). A defendant's request for self-representation must be unequivocal, and even where an unequivocal request is made, the right might be waived through subsequent conduct indicating the defendant's vacillation on, or abandonment of, the issue. *See People v. Johnson*, 2015 COA 54, ¶ 19; *see also United States v. Frazier-El*, 204 F.3d 553, 558 (4th Cir. 2000) (holding that an assertion of the right to self-representation must be clear and unequivocal; knowing, intelligent, and voluntary; and timely).

## B.    Analysis

¶ 39    We discern no error because the record shows that the court *did* advise Walker of his right to self-representation, and he never asked to represent himself.

¶ 40    At the June 7 conflict hearing and after finding no conflict, the trial court told Walker that "[his] options are to continue to be represented by the office of the public defender at this time or represent [him]self." Walker never asked to represent himself but instead focused on the conflict he had with his attorney and on the loss of his preliminary hearing.

¶ 41    Additionally, at the hearing on November 8, Walker did not ask to represent himself after the court found no conflict and told him he would proceed with his present counsel.

¶ 42    Based on the record before us, we discern no evidence that Walker made a clear, unequivocal request to represent himself. *See Mogul*, 812 P.2d at 709. Moreover, consistent with *People v. Harris*, 914 P.2d 434, 438 (Colo. App. 1995), the case on which Walker relies, we conclude that when a trial court denies a motion for substitute counsel, it is not required to advise a defendant of his choice to continue with counsel or proceed pro se, nor must the

18

court ask a defendant to elect between these two choices. *See State v. Darby*, 2009 WI App 50, ¶ 21, (The "question of whether a trial court has an obligation to inform a defendant of the right to self-representation in the absence of a clear and unequivocal declaration by the defendant appears to have been uniformly answered in the negative."); *see also People v. Salazar*, 141 Cal. Rptr. 753, 761-62 (Ct. App. 1977) (rejecting a claim that the trial court was required to advise of the right to self-representation after court denied defendant's request to dismiss counsel); *United States v. Martin*, 25 F.3d 293, 296 (6th Cir. 1994) ("Where a defendant merely expresses dissatisfaction with trial counsel's performance, . . . [the court] will not interpret this as a motion to proceed pro se; instead, it will be understood as an appeal to the trial court's discretion to substitute counsel.").

¶ 43    Accordingly, we discern no violation of Walker's constitutional right to self-representation.

## IV.   Disposition

¶ 44    The judgment is affirmed.

JUDGE GOMEZ and JUDGE MEIRINK concur.