The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Joseph C. **FROST**, Defendant–Appellant.

No. 96CA0013.

Colorado Court of Appeals,
Div. I.

Sept. 2, 1999.

Rehearing Denied Oct. 28, 1999.*

Certiorari Granted June 19, 2000.**

---

* Metzger, J., would *GRANT.*

** Justice RICE and Justice COATS do not participate.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John J. Fuerst III, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee.

David F. Vela, Colorado State Public Defender, Karen M. Gerash, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant.

Opinion by Judge KAPELKE.

Defendant, Joseph C. Frost, appeals the judgments of conviction entered upon jury verdicts finding him guilty of sexual assault on a child, aggravated incest, and two counts of habitual criminal. We reverse and remand for a new trial.

Defendant was charged based on allegations involving his niece. The victim had made statements indicating that defendant had sexually assaulted her, and her brother said that he had witnessed the incident.

Because the victim was four years old and her brother was seven at the time of trial, the court held a competency hearing pursuant to § 13–90–106, C.R.S.1998. The court found that both children were competent and available to testify. After additional hearings, the court also held that out-of-court statements of the children were admissible pursuant to § 13–25–129, C.R.S.1998.

Defendant moved for pre-trial discovery of Department of Social Services (DSS) and Fort Morgan Mental Health Institute (FMMHI) records. Following an *in camera* review of the records, the trial court granted defendant's motion in part and released a portion of the records. The court found that the remainder of the documents were irrelevant.

Finally, the prosecution was allowed to introduce evidence of defendant's prior sexual assault on another one of his nieces as *res gestae* of the charged offenses and pursuant to CRE 404(b). The convictions here at issue followed.

I.

Defendant contends that he was denied a fair trial by the admission of testimony regarding a prior sexual assault for which he had been previously convicted. We agree.

Although it had not previously filed a motion on the issue, on the first day of trial, the prosecution filed a handwritten motion to admit evidence of a prior sexual assault by defendant as part of the *res gestae* of the offense and under the "other purposes" language of CRE 404(b). The prosecution generally argued that defendant's sexual assault of the victim's cousin, which had occurred almost fifteen years prior to the charged offenses, was so intertwined with all the testimony that its admission was necessary for the jurors to understand the testimony and the relationships among the parties.

In its ruling, the trial court concluded that evidence relating to the prior sexual assault was admissible as part of the *res gestae* of the charged offenses. In addition, after conducting the four-part test set out in *People v. Garner*, 806 P.2d 366 (Colo.1991), the court concluded that statements relating to the prior assault were also admissible under CRE 404(b) "to explain a number of things that have gone on in this case, as has already been testified to by a number of witnesses."

During trial, the cousin, who was the victim of the prior abuse, testified that she witnessed defendant having an "outburst" during which he stated that he had raped the current victim and also had thought about raping the cousin. She stated that when she later confronted defendant about the outburst, he denied making the remark, called her a liar, and indicated that he had been referring to another man who had raped her. The cousin then responded, "I told him that there was never any other guy, that the only person that ever did anything like that to me was him." She then stated that defendant had sexually assaulted her when she was approximately four or five years old.

Later in her testimony, the cousin also recounted how the victim of the current charges had told her of being assaulted by defendant and had then asked her, "Did [de-

fendant] hurt you too?" and after she responded that he had, the current victim had said, "It's scary, huh?"

In addition, a police detective testified that, during an interview with defendant, defendant admitted to sexually violating the prior victim when she was four or five years old and that he thought the prior victim had forgiven him and was "doing okay."

■ The People essentially concede that the evidence regarding the prior sexual assault was not *res gestae* evidence. We agree. The prior sexual assault of the prior victim had taken place in 1985, and the conversations at issue here all took place several months after the date of the alleged assault. Under these circumstances, it cannot be said that the evidence is "contemporaneous with and serves to illustrate the character of the crime charged." *People v. Rollins*, 892 P.2d 866, 872 (Colo.1995).

The People urge, however, that the evidence was properly admitted under CRE 404(b). We are not persuaded.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. "It may, however, be admissible for other purposes, such as to proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." CRE 404(b).

■ The prosecution must articulate a precise hypothesis by which a material fact can be permissibly inferred from the prior act independent of the use forbidden by CRE 404(b). *People v. Spoto*, 795 P.2d 1314 (Colo. 1990).

■ Trial courts have substantial discretion in determining the admissibility of similar transaction evidence, and a reviewing court will not overturn that ruling absent a showing of an abuse of discretion. *People v. Gibbens*, 905 P.2d 604 (Colo.1995).

Here, the prosecutor did not indicate that she sought admission of the prior act evidence for any of the specific limited purposes set forth in CRE 404(b). Nor did she actually articulate a precise hypothesis for the admission of the prior act evidence. She simply argued generally that the prior act evidence was necessary to enable the jury to understand all the testimony.

■ However, we can find no basis for concluding that such evidence was in fact needed for the jury to understand any relevant aspect of this case. Further, even if the other components of the *Spoto* test were met, under the circumstances here, the unfair prejudicial effect of such evidence would substantially outweigh the probative value, which appears marginal at best.

For example, the victim's cousin could have testified about the victim's account of the sexual assault without mentioning the victim's inquiry about whether defendant had also hurt the cousin. Similarly, defendant's statement to the detective could have been presented without inclusion of the references to defendant's prior sexual assault on the victim's cousin. Finally, the cousin's alleged statement to defendant that he was the only one who had ever raped her was not needed for an understanding of the comments defendant himself had made.

In each instance the information relevant to the charged offense was readily understandable on its own, and there was simply no necessity for the evidence relating to defendant's prior criminal conduct.

In addition, we are not persuaded that information regarding the prior sexual assault on the cousin was somehow needed in order for the jury to understand either the living arrangements in the household or the relationships among the parties. In fact, the evidence was neither offered nor admitted to show any "context" for relevant evidence in this regard.

We also note that, although the court said it would allow the evidence of the prior assault only for the limited purpose of assisting the jury in understanding other evidence, even in opening statement the prosecutor stated that "approximately ten years ago, the Defendant sexually assaulted [the cousin]. . . ." Defendant's objection to the comment was overruled. In closing argument, the prosecutor again stated that the cousin "had been a victim of sexual assault" by defendant. Thus, the use of the evidence in

fact went beyond mere presentation of a context.

In *Callis v. People*, 692 P.2d 1045, 1052 (Colo.1984), the supreme court discussed the admissibility of references to prior criminal conduct appearing in an accused's custodial statement to police. The court indicated that the appropriate inquiry in determining admissibility is "whether the reference to other offenses has independent relevancy to the charges and, if not, whether this reference can be eliminated without significantly impairing the substantive content of those parts of the statement otherwise admissible." In addition, the court noted that references to prior criminality not otherwise admissible must be excised or deleted "unless such excision would significantly impair the meaning and evidentiary value of the admissible parts of the accused statement." *See also* E. Imwinkelried, *Uncharged Misconduct Evidence* § 6:12 (1994) (uncharged misconduct evidence is admissible to explain relevant conduct only when explanation for the conduct is actually needed).

Applying these standards, we conclude that the references to the prior assault on the cousin were not independently relevant to the charged offense and that such references could have been excised without impairing the content of the relevant statements. Further, evidence of the prior assault was not needed to explain the relevant conduct and statements.

■ Also, as in *Callis v. People, supra,* here any probative value of the references to prior criminal conduct was significantly outweighed by the danger of unfair prejudice. CRE 403.

■ The People urge that, even if we conclude that the prior act evidence was improperly admitted, the error should be deemed harmless in light of the overwhelming evidence of defendant's guilt. We disagree.

■ If a reviewing court can say with fair assurance that, in light of the entire record of the trial, the alleged error did not substantially influence the verdict or impair the fairness of the trial, the error may properly be deemed harmless. *People v. Leske,* 937 P.2d 821 (Colo.App.1996); *see* Crim. P. 52(a).

Here, the victim's brother had previously recanted his statement that he saw the assault occur, but then returned to his original version at the time of trial. While there was lay testimony that the victim had complained of anal pain and had an anal rash, there was no medical evidence confirming that an assault had occurred. Under these circumstances, we do not consider the evidence overwhelming and cannot agree that the improper admission of the evidence of the prior sexual assault did not substantially influence the verdict or impair the fairness of the trial. Thus, we conclude that the conviction cannot stand and that a new trial is required.

## II.

Among the issues that may arise on retrial is defendant's contention that the trial court committed reversible error by concluding that the hearsay statements of the victim and her brother were reliable and admissible. We perceive no error in the admission of these statements.

In reporting the alleged sexual abuse, the victim and her brother made statements to their mother, their cousin, and to a police detective. Following a pre-trial hearing, the court concluded that the hearsay statements by the children were admissible under the excited utterance exception to the hearsay rule and pursuant to § 13–25–129, C.R.S. 1998.

Because the People concede, and we agree, that the hearsay statements do not qualify as excited utterances under CRE 803(2), we only address their admissibility under relevant statutory provisions.

Pursuant to § 13–25–129, C.R.S.1998, a child's out-of-court statement, not otherwise admissible by a statute or court rule that provides a hearsay exception, may be admissible as evidence in any criminal, delinquency, or civil proceedings in which a child is a victim of an unlawful sexual offense.

In a hearing conducted outside the presence of the jury, the court must find that the "time, content, and circumstances of the statement provide sufficient safeguards of reliability." In addition, the child must either

testify at the proceeding or there must be corroborative evidence of the act which is the subject of the statement. Section 13–25–129(1)(a)–(b), C.R.S.1998.

■ Factors to be considered in determining whether a child's out-of-court statement is reliable include:

(1) whether the statement was made spontaneously;

(2) whether the statement was made while the child was still upset or in pain from the alleged abuse;

(3) whether the language of the statement was likely to have been used by a child the age of the declarant;

(4) whether the allegation was made in response to a leading question;

(5) whether either the child or the hearsay witness had any bias against the defendant or any motive for lying;

(6) whether any event occurred between the time of the abuse and the time of the statement which could account for the contents of the statement;

(7) whether more than one person heard the statement; and

(8) the general character of the child. ·

*People v. District Court,* 776 P.2d 1083, 1089–90 (Colo.1989).

■ A trial court's findings concerning reliability of a child-victim's out-of-court statements will not be disturbed on appeal if they are supported by the record. *People v. Trujillo,* 923 P.2d 277 (Colo.App.1996)

■ Here, the trial court found that the statements by the victim and her brother to their mother and the victim's statements to her cousin were spontaneous and that any follow-up questioning was non-leading. In addition, the mother and cousin testified that the children were frightened and nervous while describing the abuse. Similarly, with regard to the statements made to the police detective, the court found that the detective's questions were non-leading. Finally, the court found that the language used by both children was age-appropriate, that there was no prejudice or bias by the children against the defendant, and that there did not appear to be any event between the time of abuse

and the time of the statements that would account for the contents of the statements. The record supports the court's findings.

Therefore, we find no abuse of discretion, and admission of the statements would again be appropriate on retrial.

### III.

Defendant next contends that the trial court erred by denying him access to DSS records. In addition, he argues that his appellate counsel should have been allowed access to these records for purposes of his appeal. We disagree.

After defendant moved for the pre-trial discovery of all DSS records regarding the victim, her brother, and their family, the trial court conducted an *in camera* review of the DSS records. Thereafter, the court released a portion of the records and found the remainder of the documents irrelevant.

■ Section 19–1–307(2)(f), C.R.S.1998, grants a court access to child abuse or neglect records upon its finding that such access may be necessary for determination of an issue before the court. Such access is limited to an *in camera* inspection unless the court determines that the public disclosure of the information contained in the records is necessary for the resolution of an issue then pending before it. *People v. Turley,* 870 P.2d 498 (Colo.App.1993).

■ The party seeking access to the child abuse reports has the initial burden of showing the applicability of an exception to the statute's rule of confidentiality. The court is under no obligation to review the record before there has been a sufficient offer of proof and it has made an initial finding of possible necessity. *People v. Exline,* 775 P.2d 48 (Colo.App.1988).

Although the trial court initially concluded that defendant had not made a sufficient offer of proof to support the disclosure of the confidential DSS records, the court nevertheless conducted an *in camera* review of the records in an "excess of caution." Even if we assume that defendant made a sufficient offer of proof, we also find no basis for the disclosure of the DSS records. Based on our

review of the documents, we agree with the trial court's conclusion that the non-disclosed documents were not relevant to any issue before the court. Therefore, we conclude that the trial court did not abuse its discretion.

■ We also reject defendant's contention that his appellate counsel should have been allowed access to the sealed records for purposes of his appeal.

In *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), the Supreme Court addressed whether a defendant had a constitutional right to full access to confidential state child-abuse records. The Court held that a defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through a state's files. While it acknowledged that an "advocate's eye" may be helpful to a defendant, the Court held that a defendant's right to a fair trial was protected by requiring the trial court to conduct an *in camera* review. In addition, the defendant was allowed to request and argue the materiality of specific information contained in the records. Finally, the Court noted that to allow full disclosure to defense counsel of the privileged child-abuse information would unnecessarily sacrifice the state's compelling interest in protecting this sensitive information.

Similarly, in *People v. Bean*, 137 Ill.2d 65, 147 Ill.Dec. 891, 560 N.E.2d 258 (1990), the court held that a defendant was not denied his right to effective cross-examination by the trial court's refusal to allow his counsel to review all of a witness' privileged mental health records. The court also rejected defendant's argument that his appellate counsel needed access to the confidential records for purpose of appeal. The court noted that the State had no greater knowledge than defense counsel of the sealed records at trial or during the appellate proceedings. After reviewing the sealed records itself, the court concluded that defendant was not denied effective assistance of appellate counsel as a result of the nondisclosure of the sealed records.

Here, neither defense counsel nor the attorney general's office was allowed access to the records for purposes of this appeal. Also, allowing appellate defense counsel to review the entire DSS file would unnecessarily sacrifice the state's interest in protecting the confidentiality of DSS records. We thus conclude that the trial court's *in camera* review of the DSS records, along with our review on appeal, provides sufficient safeguards of defendant's right to discovery of potentially exculpatory material.

## IV.

Finally, as to his convictions as an habitual criminal, defendant contends that the prosecution failed to prove that he had two prior felony convictions. We conclude that the evidence was sufficient and, if admitted upon retrial, could support such convictions.

As proof of one of defendant's prior convictions, the prosecution submitted documentary evidence including an information, a minute order referring to the court's order of judgment and sentence, a conditions of probation order, and a petition and order to terminate probation. The prosecution also presented the testimony of the victim in the prior prosecution, as well as defendant's own admission that he had been convicted of and sentenced for two prior sexual assaults.

■ Section 16–13–102, C.R.S.1998, governs the admission of evidence in habitual criminal proceedings. It provides that a duly authenticated copy of the record of former convictions and judgments is prima facie evidence of the conviction and may be used as evidence at the habitual offender sentencing. Section 16–13–102, C.R.S.1998. Certified copies of public records provide proper authentication of former convictions and judgments for purposes of § 16–13–102, C.R.S.1998.

■ A conviction for purposes of the habitual offender statutes is effective as of the date the judgment of conviction is entered by the trial court. *People v. Harris*, 914 P.2d 434 (Colo.App.1995).

■ A judgment of conviction consists of the recital of the plea, or the verdict or findings, the sentence, the amount of presentence confinement, and costs, if any are as-

sessed against the defendant. Crim. P. 32. A judgment enters when it is entered in the criminal docket. *People v. Harris, supra.*

■ The prosecution must prove defendant's prior convictions beyond a reasonable doubt. *People v. Bielecki,* 964 P.2d 598 (Colo.App.1998).

■ Here, as to one of the prior convictions, the prosecution presented certified copies of the minute order, which meets the requirements of a criminal docket entry according to Crim. P. 55(a)(3) and, therefore, constitutes the entry of the judgment of conviction. *See People v. Harris, supra.*

The minute order, in conjunction with a certified copy of the information, recited the defendant's guilty plea to criminal attempt to commit sexual assault on a child and a sentence of two years to probation. In addition, the certified copies of the conditions of probation order and the termination of probation order stated the applicable court costs and also recited defendant's sentence. Therefore, taken together, the certified records established all the necessary elements of a judgment of conviction under Crim. P. 32.

In addition, the testimonial evidence established that defendant was the person who had been convicted of the prior offense. The victim of the offense which led to the conviction testified that defendant had been the perpetrator. She further identified the jurisdiction in which the conviction had been entered, the approximate time the case was filed, and the sentence defendant received. Also, a police detective testified that, during a pre-trial interview, defendant admitted the prior conviction involving that victim and also admitted having received a two-year sentence to probation.

■ Finally, we also reject defendant's contention that the trial court improperly took judicial notice that the crimes alleged in the two prior convictions were felonies. *See Massey v. People,* 649 P.2d 1070 (Colo.1982)(classification of a past offense is a question of law and a court's taking judicial notice of such does not invade the province of the jury).

Under this state of the record, the evidence submitted to prove defendant's convictions could provide adequate support for a judgment of conviction as an habitual criminal.

The judgments are reversed, and the cause is remanded for a new trial.

Judge TAUBMAN concurs.

Judge METZGER dissents.

Judge METZGER dissenting.

Because I see no abuse of discretion in the trial court's admission of evidence concerning defendant's prior sexual assault, I respectfully dissent from part I of the majority opinion and would affirm defendant's conviction.

The list of permissible purposes in CRE 404(b) for admission of other crimes evidence is not exhaustive. *People v. Miller,* 890 P.2d 84 (Colo.1995). There are numerous other uses to which evidence of criminal acts may be put, and those enumerated are neither mutually exclusive nor collectively exhaustive. *See* 1 *McCormick on Evidence* § 190 (J. Strong 4th ed.1992); 2 J. Weinstein & M. Berger, *Weinstein's Federal Evidence* § 404.22[6] (J. McLaughlin 2d ed.1999).

One proper purpose for admitting other acts evidence is to show the context of a charged crime. *United States v. Brewer,* 1 F.3d 1430 (4th Cir.1993).

In *United States v. Sarracino,* 131 F.3d 943 (10th Cir.1997), the court analyzed whether context evidence relating to a defendant's admission of culpability was properly admitted pursuant to Fed.R.Evid. 404(b). Concluding that the trial court had not abused its discretion in admitting such evidence, the court reasoned:

Although we have been unable to find any cases applying the context principle to a once-removed situation like the one before us, we believe the reasons for admitting context evidence apply equally in this situation. A jury 'cannot be expected to make its decision in a void.' *United States v. Masters,* 622 F.2d 83, 86 (4th Cir.1980). The members of the jury had to determine what weight to give to [defendant's] admission, and to do so they had to know the

circumstances under which the admission was made. Consequently, because the evidence was offered to show context and not merely to show [defendant] had a tendency toward violence, the first part of the Rule 404(b) test [proper purpose] was satisfied.

*United States v. Sarracino, supra,* 131 F.3d at 949.

The parties argued the admissibility of the challenged evidence in light of the rule set out in *Callis v. People,* 692 P.2d 1045, 1051 (Colo.1984), which provides:

We thus hold that a trial court, in considering the admissibility of an accused's statement, must excise or delete any reference to prior criminality that is not otherwise admissible under the narrow exceptions to the general rule of exclusion, unless such excision would significantly impair the meaning and evidentiary value of the admissible parts of the accused's statement. If the trial court rules that the reference to prior criminality qualifies for admission under applicable rules of relevancy or that the reference cannot be excised without impairing the meaning and evidentiary value of the other admissible parts of the statement, the court must then adhere to the procedural safeguards of *Stull* [*v. People,* 140 Colo. 278, 344 P.2d 455 (1959) ] by appropriately instructing the jury on the limited purpose for which such evidence is being received.

The evidence at issue here and its procedural history are as follows.

Here, after being released in October 1994 from serving the entirety of his prison sentence for sexually assaulting one of his nieces, defendant returned home to live with his parents. Also living in that home were defendant's brother and his wife, along with their three young children.

Because of defendant's criminal history, living arrangements were rigidly demarcated; defendant's brother and the brother's family lived in the basement and defendant and his parents lived upstairs. The children had been instructed by their parents and grandparents never to go upstairs and defendant had strict orders never to go to the basement. The children were never to be alone with defendant.

Defendant's brother and his family moved out of that home in late November 1994.

In mid-December 1994, defendant's brother's wife was told by her three-year-old daughter, the victim here, that "Uncle Joe [the defendant] hurt me." The child described graphically an incident of sexual assault she said had occurred in the basement when she was living in the same house as defendant. Her six-year-old brother confirmed, separately, essentially the same facts and related that he had seen the incident through the basement window.

The mother reported the incident to the police. The children's statements to authorities were essentially the same as the report they had given her.

According to the niece's testimony, in mid-March 1995, while watching television with his mother and his 18–year–old niece, defendant began screaming that, "I tried to f\* \* \* [the victim]." He also said he was going to rape the niece who was in the room at the time.

That niece later confronted defendant with the threat he had made during his outburst. Defendant denied having said that and told her, "I was talking about that other guy that raped you." She rejoined, "What other guy? No one else has ever raped me other than you." Defendant did not respond. In fact, defendant had sexually assaulted her when she was approximately four years old and had pled guilty to that offense.

The niece reported this conversation to the police and defendant admitted to a detective that he had sexually assaulted her several years earlier. He also admitted having told her that he had sexually assaulted the victim in this case.

A few days after defendant's confrontation with his niece, she was approached by the victim in this case. The victim confided to defendant's niece how defendant had sexually assaulted her. During this conversation, the victim asked: "Did Uncle Joe hurt you too?" The niece said, "Yes," and the victim then stated: "It's scary, huh?" The niece agreed.

Procedurally, the issue of admission of these statements was somewhat convoluted.

The day before trial, defense counsel moved to redact from defendant's statements to the detective all references to his prior criminality. In response, the prosecutor moved to admit the statements regarding the prior sexual assault on the niece pursuant to CRE 404(b) and *res gestae.*

The trial court partially granted defendant's motion and redacted all references to defendant's prison incarceration, all references to defendant's prior sexual assault on the niece's sister, and all references to his alleged prior sexual assault of his sister. However, the court determined the references to the prior sexual assault on his niece would be admitted.

The trial court analyzed the evidence in light of the principles set out in *People v. Garner,* 806 P.2d 366 (Colo.1991), and found:

> It begins at the very beginning, with [defendant] being released from prison and the arrangements being made that . . . the children would not be alone with him. . . . That whole arrangement cannot fully, in the Court's opinion, be understood by the jury without them understanding why it is that the arrangements were made.
>
> . . . .
>
> Once the allegation is made, then a number of statements involve the Defendant's prior contact with [his niece] . . .: [she] moving out and then moving in again with [the victim's parents], who were her aunt and uncle, and [the victim] then, because [the niece] was in the house, having the opportunity to speak with her and bringing her in her bedroom and talking with her, including statements of the Defendant allegedly hurting [the niece] also. The explanation by the children's mother that, either in detail about what happened, as she told the detective, or as she testified, that the Defendant hurt his cousins and they should stay away from him is also evidence which is part of this case and involves the prior assault on [the niece].

The court determined that this was proper context evidence, particularly in light of defendant's theory that the alleged victim and her brother were so sexually sophisticated as to be capable of concocting their stories.

A trial court has substantial discretion when determining the admissibility of evidence of other acts. *People v. Vialpando,* 954 P.2d 617 (Colo.App.1997). Once a trial court has ruled that such evidence may be admitted, we must afford it the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected. *People v. Gibbens,* 905 P.2d 604 (Colo.1995). Thus, we may overturn this evidentiary ruling only if we find it to be manifestly arbitrary, unreasonable, or unfair. *People v. Czemerynski,* 786 P.2d 1100 (Colo.1990).

I cannot say the trial court abused its discretion in admitting the evidence. Its detailed and thorough findings are completely supported by the record. The context purpose was proper in light of the unique facts and circumstances here, including the relationships among the parties, their living conditions and motives, and defendant's theory of defense. Unless the fact of defendant's prior sexual assault on his niece were known, the jury would have no framework within which to evaluate either defendant's or the victim's statements to her.

Under the unusual living arrangements of defendant's family, testimony that he was in the basement with the victim was highly significant. However, that significance is apparent only if the reason for those arrangements is known. If the jurors had not received testimony about defendant's criminal history, they would have been placed in the impossible position of determining guilt or innocence by reference to unrelated snippets of information having no contextual meaning.

Hence, evidence was highly relevant and probative and was not so prejudicial as to inject extraneous considerations such as bias, sympathy, anger, or shock into the proceedings. *People v. Gibbens, supra.* And, the trial court correctly instructed the jury as to its limited purpose each time the evidence was mentioned and again in the final instructions.

Therefore, I would find no abuse of discretion and would affirm the defendant's conviction.