The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Jody JOWELL, Defendant–Appellant.

No. 04CA1816.

Colorado Court of Appeals, Div. VI.

Jan. 24, 2008.

Certiorari Denied Aug. 20, 2008.

**40**

John W. Suthers, Attorney General, Matthew D. Grove, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Jud Lohnes, Deputy State Public Defender, Priscilla J. Gartner, Deputy State

Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge RUSSEL.

Defendant, Jody Jowell, was accused of sexually abusing his stepdaughter, T.C., between 1993 and 1998. He was tried before a jury and convicted of two counts of sexual assault on a child by a person in a position of trust, and one count of sexual assault on a child as part of a pattern of abuse. He was sentenced to sixteen years in prison.

Jowell now appeals the judgment of conviction. He contends that the trial court committed reversible error in failing to disclose social services records and in allowing the prosecution to elicit expert testimony.

We reject his contentions and affirm.

## I. Social Services Records

Before trial, Jowell's defense counsel tried to obtain records held by social services agencies in Boulder, Mesa, and Saguache Counties. Counsel's efforts—along with the prosecutor's responses, the trial court's rulings, and the arguments on appeal—demonstrate significant confusion about discovery of social services records in Colorado.

We therefore begin with an overview of the governing law.

## A. Governing Law

■ In general, discovery in criminal cases is governed by Crim. P. 16. This rule describes each party's obligations and imposes deadlines for the disclosure of certain items and information. Among other things, the rule requires the prosecutor to disclose "books, papers, documents, photographs or tangible objects held as evidence in connection with the case" within twenty days of the defendant's first appearance. Crim. P. 16(I)(a)(1)(IV), (b)(1). It also requires the prosecutor to disclose material exculpatory information in compliance with the due process principles identified in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Crim. P. 16(I)(a)(2); *see In re Attorney C,* 47 P.3d 1167, 1170–71 (Colo. 2002) (Rule 16 incorporates *Brady's* materiality standard).

But Rule 16 is not the only law that regulates discovery. For certain kinds of records and information, Rule 16's general guidance may be displaced by laws that create privileges or dictate special procedures. *See, e.g., Dill v. People,* 927 P.2d 1315, 1320–25 (Colo. 1996) (notes and records made during therapy sessions are not discoverable because they are protected by the statutory psychologist-client privilege).

Here we are concerned with records that are created and maintained by social services agencies. Some of these records—specifically, records and reports of child abuse or neglect—are protected by the rule of nondisclosure set forth in section 19-1-307(1)(a), C.R.S.2007: "Except as otherwise provided in this section and section 19-1-303, reports of child abuse or neglect and the name and address of any child, family, or informant or any other identifying information contained in such reports shall be confidential and shall not be public information." *See Gillies v. Schmidt,* 38 Colo.App. 233, 237, 556 P.2d 82, 86 (1976) (corresponding confidentiality provision of the former Child Protection Act, which regulated disclosure of "child abuse records and reports," applied to the "[e]ntire contents of a child abuse report and the records related thereto").

The legislature has provided specific exceptions to this rule of nondisclosure. Two of these exceptions are relevant to most criminal cases:

[O]nly the following persons or agencies shall be given access to child abuse or neglect records and reports:

(a) The law enforcement agency, district attorney, coroner, or county or district department of social services investigating a report of a known or suspected incident of child abuse or neglect . . .;

. . .

(f) A court, upon its finding that access to such records may be necessary for determination of an issue before such court, but such access shall be limited to in camera inspection unless the court determines that public disclosure of the information con-

tained therein is necessary for the resolution of an issue then pending before it. . . . § 19–1–307(2)(a), (f), C.R.S.2007.

After considering both the plain language of the relevant provisions and the relationship between those provisions and Rule 16, the parties agree, and we conclude, that discovery of child abuse and neglect records is determined solely by the standards set forth in section 19–1–307, C.R.S.2007. *See People v. Prophet,* 42 P.3d 61, 62 (Colo.App.2001) (in substantive matters, statutes prevail over rules).

This conclusion yields certain consequences for the defendant, the prosecutor, and the court.

### 1. For the Defendant

■ The statute does not provide equal access to social services records. It contemplates that the prosecution may have full access while "investigating a report of a known or suspected incident of child abuse or neglect." § 19–1–307(2)(a). (We agree with the People that such investigation may continue after the filing of formal charges.) But it allows for defense access only if a court determines that disclosure "is necessary for the resolution of an issue," under subsection (2)(f). *See State v. Gibson,* 973 S.W.2d 231, 244 (Tenn.Crim.App.1997) (recognizing, under a similar statute, that the prosecution is allowed access to child abuse reports, while the defendant is not).

■ Therefore, the defendant cannot expect automatic disclosure of child abuse or neglect records that are "within the possession or control of the prosecuting attorney" under Crim. P. 16(I)(a)(1). Instead, the defendant must request an in camera review, identify the type of information sought, and explain why disclosure of that information "is necessary" under subsection (2)(f).

■ The trial court will not conduct an in camera review unless the defendant sets forth sufficient information to support a threshold finding that access to child abuse and neglect records "may be necessary for determination of an issue." § 19–1–307(2)(f); *People v. Dist. Court,* 743 P.2d 432, 436 (Colo.1987); *People v. Frost,* 5 P.3d 317, 323 (Colo.App.1999). To justify review, the defendant must show that child abuse and neglect records exist and may contain relevant information. *Compare People v. Turley,* 870 P.2d 498, 502 (Colo.App.1993) (in camera review was not required where defendant's offer failed to establish that social services records existed and failed to establish an evidentiary hypothesis as to how the requested information would be relevant), *with Exline v. Gunter,* 985 F.2d 487, 490 (10th Cir. 1993) (in camera review for *Brady* material was required where the defendant requested "anything in those [DSS] reports relating to credibility [of potential child witnesses]"); *see also State v. Gagne,* 136 N.H. 101, 612 A.2d 899, 901 (1992) ("[T]o trigger an *in camera* review of confidential or privileged records, the defendant must establish a reasonable probability that the records contain information that is material and relevant to his defense.").

■ To achieve the broadest possible disclosure, the defendant should explain the relevance and materiality of the information sought. *See Pennsylvania v. Ritchie,* 480 U.S. 39, 58 n. 15, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (specificity of the defendant's request may have a bearing on the trial court's assessment of materiality). If the court understands why information is sought, it can review the records with a more discerning eye and can better determine whether disclosure is necessary.

### 2. For the Prosecutor

■ The statute does not suspend the prosecutor's ethical obligation to disclose information that is materially favorable to the defendant. But neither does it exempt this information from the review procedures contemplated by subsection (2)(f). Therefore, if the prosecutor believes that a social services record contains material exculpatory information, he or she must ask the court to review the record in camera and to find that public disclosure "is necessary for the resolution of an issue," under subsection (2)(f). The prosecutor must act promptly to ensure that the resultant disclosure will be timely under the Colorado Rules of Professional

Conduct 3.8(d). *See Attorney C,* 47 P.3d at 1171–72 (disclosure is untimely if it occurs after a critical stage of the proceeding).

 The statute does not permit the prosecutor to offer records into evidence without first obtaining the court's approval. *See* § 19–3–307(4), C.R.S.2007 ("A written report from persons or officials required by this part 3 to report known or suspected child abuse or neglect shall be admissible as evidence in any proceeding relating to child abuse, subject to the limitations of section 19–1–307."). Therefore, if the prosecutor believes that a particular record contains admissible evidence, he or she must request an in camera review, identify relevant information, and explain why public disclosure of that information "is necessary." If the court determines that public disclosure is necessary, the information should be disclosed to the defense before trial.

### 3. For the Court

By supplanting the automatic disclosure provisions of Crim. P. 16(I)(a)(1), the statute places the trial court in the middle of procedural issues that would otherwise be handled by counsel alone. The burden is significant because in camera reviews may be time consuming and difficult.

 As noted, the court may review social services records only if it finds that "access to such records may be necessary for determination of an issue." § 19–1–307(2)(f). The court should approach this threshold inquiry liberally and conduct an in camera review whenever it reasonably appears that the records may contain discoverable information. *See State v. Green,* 253 Wis.2d 356, 646 N.W.2d 298, 310 (2002) (because the defendant is unable to determine the specific information in the records, in close cases the trial court should provide an in camera review).

 Whether disclosure of social services records "is necessary for the resolution of an issue" will depend on case-specific circumstances. But three observations apply generally:

1. Under the due process principles identified in *Brady v. Maryland,* the court must disclose any information that is materially favorable to the defendant because it is either exculpatory or impeaching. *See Strickler v. Greene,* 527 U.S. 263, 281–82[, 119 S.Ct. 1936, 144 L.Ed.2d 286] (1999) (defining components of *Brady* violation).

2. Although the defendant does not have a due process right to receive notice of inculpatory evidence, *see Gray v. Netherland,* 518 U.S. 152, 168–70[, 116 S.Ct. 2074, 135 L.Ed.2d 457] (1996); *Weatherford v. Bursey,* 429 U.S. 545, 559–61[, 97 S.Ct. 837, 51 L.Ed.2d 30] (1977), the statute permits disclosure of any information that is necessary to a fair resolution of the charges. Accordingly, the court should disclose even inculpatory information when such disclosure would materially assist in preparing the defense.

3. It may be significant, although not necessarily determinative, that the records contain information that would otherwise be subject to automatic disclosure under Crim. P. 16(I)(a)(1).

### B. Pertinent Events

Although Jowell sought records from several social services agencies, his appeal centers on records held by the Saguache County Department of Social Services (Saguache DSS). The pertinent events occurred over the course of two years.

### 1. Events of 2003

In March 2003, Jowell filed a motion to obtain "all documents, records, statements, interviews, or other evidence collected by the Saguache [DSS] regarding the Defendant, or the Defendant's wife, and the alleged victim in this matter, along with any witnesses." Jowell asserted that the Saguache DSS had initiated a dependency and neglect action against him and his wife, and he argued that he was entitled under Crim. P. 16 to "the production of the entire Social Services file."

In April, Jowell filed a second motion requesting specific information. Jowell alleged that T.C. had sustained a head injury in 1998 and that the Saguache DSS had investigated

the matter. Jowell asserted that "there should be documentation of said head injury" in the social services files, and he asserted that this evidence was discoverable because T.C.'s credibility would be at issue.

Although the trial court could have denied these motions outright (because they contained no request for in camera review), it decided to review the records in camera and disclose any documents that "related to the specific charges against this defendant."

After reviewing the records in camera, the court disclosed certain items to the defense. In addition, while the court's review was pending, and thereafter, the prosecution disclosed other items, including evidence and documents maintained by the Saguache DSS. (The appellate record does not indicate whether the trial court authorized these disclosures.)

### 2. Events of 2004

In February 2004, the court announced that it would conduct a second review of the Saguache DSS files. The court ordered that "[n]o information or records shall be released to the Defendant until further order of the Court." The court reviewed the records in camera and disclosed additional records.

After receiving the additional discovery, Jowell filed a list of specific items that he wanted to discover from the Saguache DSS and again requested direct access to the files. Jowell argued that (1) in camera reviews were inadequate because the court could not identify all relevant material, and (2) the Saguache DSS had waived any privilege by providing files directly to the prosecution.

In March 2004, the court entered a written order denying Jowell's request. The court noted that it had examined the entire Saguache DSS file "with the now mature defense theory of the case in mind." It ruled that Jowell's request for unfettered access was "directly contrary to the case law and statute." And it noted that Jowell had access "to the various individuals who have been involved with the victim" and "to the various social services reports tendered to the courts in two dependency and neglect cases which offer the best summary of the

activity that has taken place over time with regard to the victim and her sister."

### C. Arguments on Appeal

Jowell contends that he did not receive adequate discovery of the Saguache DSS records. He presents four arguments, which we consider and reject as follows.

### 1. Direct Access

Jowell asserts that the prosecution had direct access to every child abuse or neglect record maintained by the Saguache DSS. (He posits that records were either in the actual possession of the prosecutor or were available to the prosecutor upon mere request.) And he argues that, because the prosecution had direct access to the entire file, he should have been given direct access under the rule of *Losavio v. Mayber*, 178 Colo. 184, 190, 496 P.2d 1032, 1035 (1972).

We reject this argument. Although we accept Jowell's factual premise for purposes of analysis, we conclude that the circumstances do not give rise to a right of direct access.

In *Losavio v. Mayber*, the supreme court examined a practice that was common in Pueblo: after receiving a list of prospective jurors, police officers would check their files to determine whether any prospective juror had been convicted of a traffic or criminal offense; the officers would then deliver the results to the prosecution for use in jury selection; but they would not provide the same information to the public defender.

The supreme court held that this practice did not convert police files into public records. But the court also held that the public defender was entitled to receive the same information that had been provided to the prosecution. The court noted that, once disclosed to the prosecution, the information could "no longer be classified as 'internal [police] matters.'" *Id.* at 188, 496 P.2d at 1034. The court also noted that, for purposes of regulating the information, there was no reason to distinguish between the office of the district attorney and the office of the public defender. *Id.* at 189, 496 P.2d at 1034–35 ("In this respect, the two offices

must be treated as equals, each having the same ethical and legal responsibilities to the court and to the public at large.").

Accordingly, the court held that "defense attorneys are entitled to obtain this type of information from the prosecution" under Crim. P. 16. *Id.* at 190, 496 P.2d at 1035.

We conclude that *Losavio* is distinguishable for three reasons:

1. In *Losavio*, the police department waived its confidentiality interests in the information that it disclosed. This rationale does not apply here because the confidentiality interests belong, not merely to the social services agency, but to victims, witnesses, and other individuals.

2. In *Losavio*, there was no reason to distinguish between the district attorney's office and the public defender's office. We cannot adopt that view here because section 19–1–307, which was enacted after the events in *Losavio*, distinguishes between the prosecution and the defense.

3. In *Losavio*, the court ordered the prosecution to disclose the information under Crim. P. 16. That remedy cannot be employed here because section 19–1–307 does not permit direct disclosure by the prosecution.

### 2. Complete Access

Jowell argues that, even if he was not entitled to direct receipt of the Saguache DSS files, he should have received complete access to the files through the court's in camera review. He asserts that the DSS records were "documents ... held as evidence" within the meaning of Crim. P. 16(I)(a)(1)(IV) because they were in the actual or constructive possession of the prosecutor. And he reasons that, if social services records are "held as evidence," then disclosure of those records is categorically "necessary for the resolution of an issue" under section 19–1–307(2)(f). We disagree.

Jowell's view is inconsistent with the scheme set forth in section 19–1–307. If the defense were entitled to receive all records that are available to the prosecution, there would be no meaningful difference between the broad right of access that is given to law enforcement agencies under subsection (2)(a), and the limited access that is authorized under subsection (2)(f). And if subsection (2)(f) were necessarily satisfied upon a showing that the records are "held as evidence," the court's in camera review would be meaningless.

We conclude that Jowell was not entitled to receive the entire Saguache DSS file. As noted in part I.A.3, whether disclosure "is necessary" under subsection (2)(f) depends on various case-specific factors. Discoverability under Crim. P. 16(I)(a)(1) is but one factor.

### 3. Independent Review

Jowell contends that the trial court's in camera reviews were inadequate, and he requests an independent review on appeal under *People v. Frost*, 5 P.3d at 323–24. We deny this request.

The appellate record does not contain all of the Saguache DSS materials that the defense received from the prosecution and the trial court. Consequently, we cannot conduct a meaningful review on appeal: we cannot reliably identify the material that was reviewed but not disclosed; nor can we reliably determine whether undisclosed information is meaningfully different from that which was disclosed.

To preserve the right to an independent appellate review, Jowell's trial attorney should have made certain that the record contains a complete set of the materials received in discovery. Because counsel failed to do this, the issue has been forfeited. *See People v. Ullery*, 984 P.2d 586, 592 (Colo. 1999) ("[Defendant] abandoned his right to pursue his objection on appeal when he failed to make a sufficient record that permits [appellate] review."); *Till v. People*, 196 Colo. 126, 127, 581 P.2d 299, 299 (1978) ("It is the appellant's duty to designate those portions of the record he deems necessary for an appeal, and to see that the record is transmitted.").

#### 4. Failure to Disclose a Specific Document

Jowell argues that the trial court erred in failing to disclose a particular report. We agree, but we conclude that Jowell has failed to demonstrate prejudice.

##### a. Additional Facts

In June 1998, T.C. was interviewed by a Saguache DSS caseworker. During this interview, she gave a detailed account of the alleged sexual abuse. The interview was recorded on tape and summarized in a written report. The record indicates that Jowell received a copy of the tape, but not the written report, before trial.

At trial, the prosecution produced evidence that Jowell had subjected T.C. to various forms of sexual abuse, including oral sex. T.C. testified that one of her sisters had walked into the room while Jowell was performing oral sex on her. T.C.'s younger sister corroborated this statement.

After the close of the prosecution's case-in-chief, defense counsel gave an opening statement in which he advanced a theory of recent fabrication. Counsel stated that there had been no eyewitness reports of sexual abuse in 1998. And he suggested that T.C. had lied to obtain money.

In support of this theory, defense counsel called the Saguache DSS caseworker to testify as a defense witness. Among other things, the caseworker testified that T.C. did not mention oral sex during the June 1998 interview.

On redirect, defense counsel asked the following questions:

Q. Now, [the prosecutor] had asked you to clarify that there was no oral sex incident described in 1998 by [T.C.] to you; is that correct?

A. That's correct.

Q. In addition, [T.C.] never reported to you in '98 that there was ever an eyewitness to that incident as well, correct?

A. I did have knowledge of a sister possibly observing that.

Q. In 1998?

A. Yes.

Q. Where is that reflected in your reports?

A. I'm not sure.

Further questioning revealed that the caseworker had received no eyewitness report of oral sex and that her initial answer had reflected a misunderstanding of defense counsel's question. However, the caseworker maintained that she had known, in 1998, that one of the sisters may have observed some form of sexual activity between Jowell and T.C.

After a recess, the caseworker returned to court with a copy of the June 1998 report. Defense counsel then questioned the caseworker as follows:

Q. In your report that I've just been handed, [it] says that sometimes [T.C.'s sister] tried to come in but a couple of times, and [Jowell] told her to go play, right?

A. [Yes.]

. . . .

Q. What I read, was that the only note that you're trying to say that there could be an eyewitness?

A. That's one of the things from what you ask that we found something to. There may be more in the file. There's like big stacks that everyone is going through.

Q. There's nothing sexual here, except that she tried to come in, and her dad would tell her to go play. There is nothing about that was during a sex act, is there?

A. Not specifically.

In response to further yes-or-no questions, the caseworker said: (1) "There's apparently a lot of stuff in the file that you don't have"; (2) "[I]t's a really thick file"; and (3) "I do have some other stuff that you asked for too."

##### b. Analysis

We agree with Jowell that the trial court abused its discretion in failing to disclose the June 1998 report. *See Frost*, 5 P.3d at 324 (reviewing for abuse of discretion). The report should have been disclosed as "necessary for the resolution of an issue," because it contained T.C.'s statements about

the charged events and evidenced the case-worker's understanding and interpretation of those statements.

We do not agree, however, that the court's error was prejudicial.

To obtain a new trial for a discovery violation, the defendant must show a reasonable likelihood that the verdict would have been different had the pertinent information been disclosed before trial. *See People v. Bradley,* 25 P.3d 1271, 1276 (Colo.App.2001) ("[T]he prosecution's failure to comply with Crim. P. 16 is not reversible error unless the withheld evidence is material to guilt or punishment."); *see also United States v. Mendoza–Paz,* 286 F.3d 1104, 1111 (9th Cir.2002) (applying Fed.R.Crim.P. 16).

Here, Jowell argues that he was unfairly surprised as a result of the nondisclosure. He asserts that defense counsel had formed and announced a theory of recent fabrication without knowing about the written report. And he asserts that this theory was undermined when the caseworker (1) recalled that she had known of an eyewitness in 1998, and (2) produced the June 1998 report to corroborate her testimony.

We acknowledge that defense counsel was surprised by the caseworker's testimony and the unexpected appearance of the June 1998 report. But we perceive no causal connection between the nondisclosure and the complained—of prejudice:

- Jowell does not allege, much less demonstrate, that the June 1998 report contained information materially different from that which was available through other sources. Accordingly, there is no reason to think that defense counsel would have chosen a different theory of defense had the report been disclosed before trial.

- The report does not indicate that a sister observed any form of sexual contact between Jowell and T.C. Thus, had the report been disclosed before trial, there is no reason to think that defense counsel would have refrained from asking the caseworker whether she had received a report of "an eyewitness to that [oral sex] incident" in 1998.

- Because the report does not corroborate the caseworker's recollection, there is no reason to think that pretrial disclosure would have enabled defense counsel to avoid the caseworker's surprising answer.

c. Plain Error

■ Of separate concern is the caseworker's repeated suggestion that the Saguache DSS files contained material that defense counsel had never seen. These statements were objectionable because they hinted at a body of evidence that had not been presented at trial. *Cf. Domingo–Gomez v. People,* 125 P.3d 1043, 1052–53 (Colo.2005) (improper for prosecutor to suggest during closing argument that the jury may not have heard all of the evidence).

However, defense counsel did nothing to remedy these statements at trial. Counsel did not object, move to strike, or request a curative instruction. *See People v. Abbott,* 690 P.2d 1263, 1269 (Colo.1984) (when the accused believes that he is prejudiced by an unresponsive answer, he must object, move to strike, or request a curative instruction). We therefore apply plain error standards and will reverse only if the statements constituted obvious error that so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment. *See People v. Miller,* 113 P.3d 743, 750 (Colo.2005).

We conclude that the statements do not warrant reversal as plain error. The prosecution's case depended, not on documentary evidence, but on T.C.'s account of the charged events. T.C.'s testimony was straightforward and materially consistent with statements she made to several witnesses. It was supported by the testimony of a sister who had observed an act of oral sex and by another sister who had witnessed odd behavior. T.C.'s actions, and the circumstances surrounding her final outcry and interview, suggest that she suffered real trauma and did not merely fabricate her allegations to obtain money. Thus, the caseworker's statements did not undermine the fundamental fairness of the trial or cast serious doubt on the reliability of the judgment.

## II. Expert Testimony

 Jowell contends that the trial court erred in allowing the prosecution to elicit expert testimony from a witness who had not been endorsed as an expert. We disagree.

### A. Governing Law

The prosecution must provide notice of every witness that it intends to call at trial. § 16–5–203, C.R.S.2007; Crim. P. 16(I)(a)(1)(VII). If the witness is an expert, the prosecution must provide pertinent reports and statements at least thirty days before trial. Crim. P. 16(I)(a)(1)(III), (b)(3).

However, the prosecution may call witnesses, without prior notification, "whose names or the materiality of whose testimony are [sic] first learned by the district attorney upon the trial." § 16–5–203; *see also People v. Avila*, 944 P.2d 673, 675 (Colo.App.1997) (trial court properly allowed the prosecution to offer the testimony of a rebuttal expert because the "necessity of calling the witness was not known to the prosecution until mid-trial").

### B. Pertinent Events

J.D. is a psychotherapist who counseled T.C. and helped her prepare a written statement about the alleged sexual abuse. She was endorsed by both parties as a potential perceiving witness, but not as a potential expert witness.

At trial, defense counsel called J.D. to testify. Among other things, counsel elicited that J.D. had become concerned about T.C.'s interaction with a student counselor. J.D. testified that, handled improperly, discussions about sexual abuse could "precipitate many more post-traumatic stress disorder [PTSD] symptoms." She also agreed that other types of abuse could trigger PTSD.

The prosecutor then examined J.D. about her credentials and experience with PTSD. Over defense counsel's objection, the court allowed the prosecutor to qualify J.D. as an expert in the area of PTSD diagnosis. J.D. then described PTSD in more detail, testified that sexual abuse could cause PTSD, and testified that T.C. had exhibited signs of PTSD.

### C. Analysis

The record shows that the prosecution had no reason to inquire about J.D.'s expertise in PTSD diagnosis, or to think that her expertise would be relevant, until defense counsel raised the subject at trial. Under the circumstances, the trial court properly allowed the prosecution to pursue the line of questioning and to elicit expert testimony, despite the absence of a pretrial endorsement.

The judgment is affirmed.

Judge DAILEY and Judge GRAHAM concur.